Your Honor, this is the second case of the morning, Paul, 2-12-88, the state of Illinois v. Jason v. Kidd, on behalf of the appellant, Mr. Paul Rogers, on behalf of the people, Ms. Sally Swift. Thank you. Mr. Rogers? Good morning. Will you please support the counsel? At the risk of sounding corny, I think that this case could aptly be referred to as a case of the under-instructed jury. And what I mean by that is there are two issues, and they have a common theme, and they both involve the absence of jury instructions. Counsel, you didn't raise in your brief a question of whether or not the defendant was guilty beyond reasonable doubt. And the decedent died from morphine poisoning and allegedly cocaine consumption. According to the state's expert, yes. And I think there was testimony indicating that the morphine levels were lethal. Yes. By themselves. Yes. And that morphine is a counter. It causes the heart and lungs to slow down, almost stop, whereas cocaine tends to stimulate, excite and is an upper. So how is it that if the only thing that the defendant delivered was an upper, and this woman died from extreme downer poisoning, why this isn't a question of getting reasonable doubt? Well, Your Honor, certainly if this Court wants to find that, I'm not going to argue with it. But I did not feel that I could justify arguing because, according to the state's expert, she died from a combination of the cocaine and the morphine. And I think there's just enough. So is this an existing situation where, like global warming, if you prove global warming, that things will get cold, or that things getting cold is proof that global warming exists? Well, I'm not sure if that's – I mean, I think that's a possible analogy. It's counterintuitive, isn't it? It's counterintuitive. I think it's a case of sometimes events are overdetermined in the sense that there is more than one cause. And in this case, according to the state's expert, the cocaine was at least a contributing factor in the death. And based on the legal definition of cause for the statute, that's enough. And that's even according to the jury instructions. And we don't really have any argument with it. That's what the element is, that it doesn't have to be the only cause or the sole cause. And the state's expert argued – the state's expert found that it was a combination of cocaine and morphine that caused the death. Now, what he didn't tease out, what never got teased out really at the trial, was whether the cocaine would have been fatal in and of itself. I think it's implied that it would not have been since she didn't die, at least until after she had taken the morphine. Well, wasn't there testimony that almost all the cocaine had been metabolized? Yes. I think there was some dispute about exactly how long it took or when all the cocaine would have been metabolized. The state's expert said that she had a 220 – 2280 nanograms per milliliter of blood – of cocaine in her blood within a couple of hours of her death. The defense expert said that the toxicity of the cocaine would have worn off by midnight or so. One of the problems here is that we don't know the exact time of death. We know when she was found dead, but there was never any finding as to exactly when she died. And so it's difficult then to – Was there a guesstimate based upon the pooling of the blood? I don't recall any testimony. There was testimony about the pooling of the blood, but I don't think anybody was ever asked. I don't think the forensic pathologist was ever asked. But the pooling was a result of him flipping her over, too. Yes, that's correct. I think that would have complicated the analysis from the forensic standpoint. So had he not flipped her over, they might have had a more accurate determination? That's possible, although I don't think the forensic pathologist was even asked that question. So you're saying that the expert might have flipped depending on how she was? I guess it's possible. We don't know. But I'm not going to presume to speak for the forensic pathologist. I'm not a pathologist. I don't know what they would say. So you're raising the issue, as you started out, that this was an under-instructed jury. You talk about the jury instruction with respect to delivery and that only one of the definitions was given. Correct. And there are three. Yes. Do you believe that, and you believe that if those instructions were given, you may have had a different result? Yes, and I'll explain why that is. Because the definition that was left out was that it's the first paragraph of the relevant instruction, 17.05A. And that paragraph says that deliver is a transfer or attempt to transfer of possession. Now, that's particularly important because it includes – It's also particularly confusing, isn't it? I mean, you give all three of these instructions to a jury. How is that going to make it any clearer to them? Well, I think it does so in this way. It includes this court held, as you know, that where there is a case of joint, simultaneous possession with shared use and no delivery to a third person or not even an intent to deliver to third parties, the drug and homicide statute does not apply. And so that means there's no delivery in those situations. And so what that paragraph does is it defines what it means to deliver. Now, while we're on the subject, I know the State, I expect the State will attempt to distinguish coups on the grounds that there was a jury question there showing that they were somewhat confused about whether a delivery can occur where you just give the substance to somebody and there was no response. And, in fact, in coups, and in this case as well, the jury did receive the paragraph three of that instruction, which talks about that, which says, essentially, giving without money, without any consideration, is delivery. I've given my reasons in the brief and the required brief as to why I think coups is not meaningfully distinguishable here. What do the committee notes say about 1705A? The committee notes for 1705A, give me a moment. They indicate to give all three. Well, I believe that they allow for some discretion as to whether particular issues are, particular questions are at issue. It does say that you give paragraph one when there's some evidence that the delivery question would attempt to transfer possession. Now, it doesn't say that's the only time that you give it. In coups, this Court said that it should be given in the context of that case, and that didn't involve an attempted transfer of possession.  Now, the other thing about coups, which I didn't mention, and I apologize for sort of dropping the ball on this, but I don't really think it should change the analysis of the result, is that coups also held that the trial attorney in that case should have given another instruction, 4.16, which defines possession. It talks about the difference between joint and individual possession and the difference between actual and constructive possession. And when you put those together, the jury needs to know, basically, in these drug-induced homicide cases, especially in the context of where there's an argument that this is joint, simultaneous possession with shared use, the jury needs to know what delivery is. In order to know what delivery is, they need to know what possession is, because delivery is a transfer of possession. If you don't give that first paragraph, which talks about that delivery means transfer or attempt transfer of possession, then the jury doesn't know that if there's no transfer, then there can't be a conviction. And there can't be a transfer, according to coups, if there's joint possession. And so that's really, I think, my argument in a nutshell as far as that is concerned. With respect to the other issue about the proximate cause instructions, again, you have the briefs and you know what the instructions, the proposed instructions were that were refused. One was an IPI, essentially 4.24, which defines proximate cause. And the other was a non-IPI, which further fleshes out the concept of proximate cause and especially includes the point that death has to be foreseeable as a type of harm that the reasonable person would expect from his or her, from the defendant's conduct. How does a court narrow in not giving an IPI instruction when you have a non-IPI instruction? When you have an IPI instruction, it defines it. The IPI instruction doesn't talk about the foreseeability element. And that's what's crucial. But the mental state, what's the mental state? The mental state for the delivery is knowing. Right. The mental state for the result is that it would be foreseeable to a reasonable person. But the mental state for the result isn't required, is it? It's just the mental state for the delivery. You don't have to know the results of your actions. You just know that you're making a delivery, right? I don't know that I would agree with that. The statute doesn't require causation. And it doesn't use the term proximate cause, but in the law it's always proximate cause unless we're talking strict liability. So if you take out a mental state requirement for the result, you essentially make this a strict liability offense if there's a knowing delivery and that the drugs are a cause in fact of someone dying. And it could be days later, weeks later, months later, whatever. So I think that it is proper to require a mental state for the result as well as a mental state for the act of delivery. If the state's expert had said cocaine and morphine poisoning caused the death, that's different than saying cocaine or morphine caused the death. And since he said the former and not the latter, doesn't that kind of undermine your argument about proximate cause? Because it's a contributing cause under his expert testimony? That's correct. It's correct that that's what he said. I don't think it's correct that it undermines my argument, at least not. Well, are you suggesting that the defendant is not guilty because it wasn't reasonably foreseeable that this woman was going to take Xanax and morphine and then die? Right. The Xanax, you can kind of ignore because I don't think either doctor said that that really played an important factor. But I would put the question this way. The question before the jury of causation, which is a question of fact, and so can't really be taken out of the hands of the jury, is whether it was reasonably foreseeable that the cocaine use was, would contribute to death because Ms. Castro took morphine at a later point at which, when combined with the residual cocaine in her body, caused her to die? And if she could, then whether or not she took morphine or Xanax or drank alcohol that might have caused an aggravating factor is irrelevant or immaterial. So couldn't it be argued by the State that it would be, based upon her health issues, it was reasonably foreseeable that she could have died when she took the cocaine? Maybe, you know, 8 out of 10 times she doesn't, but 2 out of 10 times she does. So, you know, doesn't that solve the issue or resolve the issue? No, I don't think it does. And it's because that's an argument that the State can make to a jury. But it's up to the jury to decide whether that, whether the evidence that was presented convinced them beyond a reasonable doubt that this result was reasonably foreseeable by the defendant. If they find that there was a delivery. Correct. By the defendant. Right. And that's, so there's two parts of it. And, you know, although, like I said, in some ways there's a unifying theme to the issues here, they do involve separate elements of the offense. And I'm not, this is not a case where I am relying on a cumulative error to say that the one error plus the other error resulted in sufficient prejudice for a reversal. I'm essentially saying either or. Either one of these is sufficient to require a reversal and a new trial. Any other questions? Thank you. You have an opportunity to make rebuttal. Thank you. Good morning, Your Honors. I have a brief that I think got off track from what I was trying to argue. I want to make that clear, which is that in causation, what we have are two, I mean, and this is what I think counsel just got away from. We have two very specific, a non-IPI, well, actually one is IPI criminal 4.24, but two different issues which this defense tendered. And they both have very big problems and could not have been given without it being an abuse of discretion. They both start out with the term proximate cause. Now, proximate cause is not used in defining what's needed for the state to prove drug-induced homicide. It doesn't talk about the elements. It doesn't talk about in terms of the issues facing the jurors. They're not going to know where this came from. And that was one of the reasons why the court said this is confusing. Does the element in the statute say result and not cause? Does the element say result may, it says cause. I thought the statute said something about results in death, that the delivery results in death. The delivery, I don't have it in front of me. I thought it was cause. But it does not speak in terms of proximate cause. That's certainly not the term. So to define a term, the term proximate cause in quotation marks means such and such, without another issue, which would then have to link it towards how that fits into the elements and the issues facing the jurors, this is confusing. Moreover, the fact that in that case, defense number four, it says needs any cause which in the natural or probable sequence, that's the wording that presumably counsel is now saying is preferable. That wording has been determined to mean the same as proximate cause, as has in Bowen, the actual wording in 7.15 that was used here. There is nothing that defense argues that says that the natural and probable sequence here would have meant that taking morphine somehow disturbed that. It's the same thing. It's taken out by the fact that if it is the sole cause, and that would be the wording under 4.24 as well as the one that was given, 7.15, if that's the sole cause, then it does disrupt the proximate cause. It does disrupt defendant's liability for this. It wouldn't change anything. It would only confuse. And then when we get to defense number five, and this is the one I really wanted to address, not only do we start again with proximate cause, which has no place within the meaning of what the jurors understand the issue is to be, they also talk in terms, and I think this is important, it says proximate cause, and this is really what I think the thrust of defense counsel's argument is, that there should be something that says proximate cause is established if Meredith Castro's death was foreseeable as a type of harm that a reasonable person would expect to see as a result of his conduct. That was the instruction that was given. Now, counsel today has sort of changed that around and said, I think it should say this or that. That's not the question before this court. The question before the court is, is defense number five, was that properly denied by the trial court? And that puts, I think, two things that are actually giving an inaccurate instruction. First of all, we have the confusion again from proximate cause. We also have the confusion from reasonable person. The jurors, without an additional instruction on what a reasonable person is, are going to say, well, you know, they could very well say this guy seemed reasonable. He was upset. His significant other died. He seemed like a reasonable guy. He says, you know, that she didn't die from taking this before. I guess that's the end of the question. That's not the inquiry. That would be an improper and inaccurate statement of law. And I point to the fact that in this defense number five, it says proximate cause is established if Meredith Castro's death. So they're making it very specific. And that would indicate, and legislatively, this is not what it's meant to, the drug-induced homicide is meant to address. That would indicate that this defendant has to somehow expect this particular person is going to die. That's not the question. The question is whether it would be foreseeable or whether, in fact, the circumstances are such that it resulted from a cause that is connected with defendant that would cause a person to die, not Meredith Castro. And for that reason, I think this whole argument then gets into Meredith Castro had certain medical conditions. She had certain problems with her health.  What if she committed suicide with a shotgun? Would the defendant be liable knowing that she had a shotgun in the house? No, he wouldn't be liable even under 7.15 because that would be, the death was not the result of a cause connected with defendant. It would not be connected with defendant's acts. Well, what if the state's expert said that after she took cocaine, she became so depressed she took her life with a shotgun? Isn't that death as a result of? No, I mean, I don't believe it is. You know, it would be, actually, I'm not sure if it would be or it wouldn't be. I'll be honest with you. I think that's a very hard one. But I think that would also be very hard for the jury under a definition of foreseeable. And that's their determination. How is this situation much different than the situation Justice McLaren just set out? I mean, how was he, how could he foresee that she would then go ahead and take Xanax and morphine? Well, there are two ways he could foresee that. One is that I think even this statute is really aimed at people who deliver. They don't have to know exactly what every person that they give that drug to is going to be taking along with it. So the fact that whether he did or didn't know, I don't believe should even play a factor in this. This could be a person who came along, delivered it to somebody who doesn't know at all. But he knows that that person has the ability and has the potential to be putting other things in their body. People often do, especially people who are taking illegal drugs. And it doesn't even have to be the morphine. It could be anything else. But they also know they find their victim, you know, I mean, they don't know who it is. They take them as they get them. Your argument seems to be counter to what it should be, simply because if we're talking about drug dealers or sellers who are delivering to an individual, they usually don't know what the individual has in their medicine chest or medicine cabinet, unless they've sold them the other half of it. That's correct. You're suggesting that they don't even have to know what else is in the medicine cabinet. All they have to know is that this person might take something that would acerbate or aggravate the drug that they take, which seems counterintuitive to me. You're literally placing a lesser burden of proof in deliveries with unknown parties than you are with people who supposedly know the person more closely. The fact that they know that they have certain other things doesn't necessarily mean that they're going to take them. Why? I'm not giving it a different burden. I'm saying that even in this case, that's why defense number five, which says it's foreseeable that Meredith Castro was going to die, could be expected that she was going to die, is the wrong language. It's inaccurate. It should be that a person. So in other words, the jurors should not be looking at Meredith Castro and all of her medical conditions and what she did and didn't do and whether the defendant knew about it. In any case, they shouldn't be looking at that. You said the intent of the legislative statute, statutory language, is that it's more in the abstract. It's objective. It's not subjective. And the defense counsel has argued, well, those are subjective observations, which must be looked at objectively. And I disagree. I think that you do not look at the specific person to determine what or what. Otherwise, drug dealers would be under a different burden if they didn't know the person. They would always suggest they didn't know the person. Why would you ever suggest you did? You take your victim as you find them. You take your victim as you find them. And in this case, that's what's wrong with defense number five, the instruction, because it makes it personal. And, in fact, I likened it to something that was rejected at the appellate level in Hudson. They didn't get to it in the Supreme Court. But in there, they said that the death, I believe the word was something like if the defendant contemplated or should have contemplated. And they said that raises it to an element of the offense, and it makes it narrower than what it really is. That's not what they need to find. The jurors don't need to know whether or not this particular defendant knew anything about what was in her body, what she might have taken, anything of that sort. But now I'll go a step further and say that should this court disagree for any reason and say, well, he did know these things, well, then I'm going to point out, as I did in my brief, that we've got undisputed facts here. In the reply brief, counsel suggests that I'm usurping the trier of facts function and saying, well, these are things that he did or did not know. I'm not doing that. There were certain things that this defendant said from the start, and he knew that she had congestive heart failure. He knew she had obesity. He knew she had hypertension. He knew she was taking other medications. He knew that she had morphine in the house and had tried to convince him to take it. He said to the police officer at the second statement, oh, you're going to find when you do the autopsy that she took morphine. He also said later when he tried to retract that somewhat at trial, she may have taken morphine. So he knew all that was a possibility. So even under the defense argument here, and even if this court should disagree and say, well, it could be subjective, all those were undisputed facts. And given that, he still can't show that there would have been a difference had that instruction been given. Ms. Swiss, then it really comes down to then this issue, the issue of delivery. How do you combat what your opponent is saying with respect to the three instructions that weren't given with respect to delivery? Well, okay, to begin with, I would say that counsel today for the first time has brought in IPI 4.16. And that wasn't in his brief. He argued that the two additional instructions here, the two additional paragraphs, I should say, under 1705A should have been given. And my response to that is they were talking about an instruction that was never requested. So we're looking for ineffective assistance of counsel. And under that standard, he's going to have to show that there is a reasonable probability that the result would have been different. And to do that, he needs some facts such as there were in Coots. And we don't have those facts here. In Coots, what's really the distinguishing and, in fact, calls for a different result, we have what the IPI has suggested delivery to be something that has a commonly understood meaning. And I think for most people, if you're in a house with your significant other passing a plate back and forth and you say I'm giving you this plate or I'm passing you this plate, you wouldn't say I'm delivering you this plate. You don't usually think of delivery as something where you're just handing it off. But obviously when the Coots jurors, and maybe because they had a very difficult and very close case, come back to this, you know, note where they say we're down to this judge. You know, we are actually thinking that could it come down to just giving, just handing. And obviously that isn't enough. So there we see that, in fact, the jurors. But the facts in Coots were probably a little clearer with respect to a delivery, if I can say that, than in this case. I mean, in this case, and again, it's up to the jury to determine whose version you want to believe. Right. Or what he initially said was what happened. I mean, I think he made two different statements. At first, the jurors can glean that he may have been the purchaser, but I think it was the officer really, and he acknowledged on price examination, he really didn't get into the question of when you went to the bar, who did the purchasing the first time. And then the second time, the kid says she did it all. Where it is in Coots, it really could go back and forth on that delivery in that case, could it not? Well, it could, except that Coots had a very specific. First of all, what we do generally understand delivery to mean is that you have some control, that it's yours somehow, possession, and that you give up that control. And when you're looking at ineffective assistance of counsel, we have to show something that tells us that the jurors might not have used the right definition. We don't have anything, because in Coots, very importantly, there were facts which the defendant, the female in it, had that controlled substance, I don't recall if it was heroin or what it was, in a pocket, and then said to the defendant, I'm not going to give you this. And at some point then did give it to him, and the statement closing argument argued that particular factual scenario and said when she handed it to him, there's delivery. So you have all sorts of circumstances which show that the jury's grappling with that very thought, that giving, meaning handing, could actually signify delivery. You have the fact that the statement... But there's also a question of possession, too, and delivery in that case, was it or not? Yes. I mean, as you have here, because in Coots, somebody, he paid for it. When they knocked at the door, she answered the door. Right. So we have... Well, right, there is a variable of facts that could go either way. But in this case, there's really three scenarios. And the first scenario is that we believe defendant, and I would have to contradict Your Honor on the fact that I think that to begin with in his statement, the police officer did say something about he did not specifically ask him questions directed at a few of those things. But the defendant then said, I paid $110. I got a good deal because they knew me and I was familiar. I brought it home, and I shared it equally. He said all of those things. And, you know, when he talked further with that same police officer, that certainly indicates that in that case, there was delivery under the statute. But that's the second time you spoke to Vargas. Right. I think it was. Excuse me. Well, then there were two more versions, really. Right. There was the version at trial, which in a sense is... And there was the version to Vargas. And Vargas was very equivocal. We may have gone together. We may have made several trips. She may have been driving. I may have been driving. You know, she may have or we may have gotten it delivered to the house. And then he ends up with saying, well, when she asked you to go get it and she's taking care of you, you know, as the woman, I'm going to go get it. If I hadn't gone and got it, she would have gone to the bar. So, first of all, this is not a case where there's an indication or a likely indication that this is the believable version of this. It's all equivocal statements followed by him saying basically that he did go to the bar to get this. But even under that version, what we don't have is if the jurors were to believe that somehow giving, handing it to him. So they both got it together, came back to the townhouse. Joint possession. Right. Joint possession. They came back to the courthouse or excuse me, came back to the townhouse. And at that point, if there had been facts, if there had been a defendant testifying that at that point we got back and she handed it to me and said have some. Some fact. But if you have joint possession, can you have delivery? No, but there's no indication. No, but there's no indication that even if there was direct delivery, that the jurors that even if you know that if the jurors had that right, of course they did to believe joint delivery, that they would have found him guilty. Because they don't. Excuse me. I think you said joint delivery. Oh, I'm sorry. Joint possession. Because if they were looking at the joint possession, they would have then said, well, where's the delivery? You know what? We have, they got it together. So delivery implies a transfer of some sort, even if it's just a handing. Where's the handing? We have no facts to show that there was a handoff at the bar. We come back. There's still no facts to show there's a handoff. So they would have found no delivery even under the wrong definition. So if they found no delivery, how did they find a drug-induced homicide? Well, that's what I'm saying. So they obviously didn't believe that. They did not believe it was joint possession because if they had, they would have found Noah. They would have found him not guilty because there were no facts. Unlike Coots, there were no facts about later being a handoff. If there had been some facts about it being a handoff later, you could argue, you know, well, okay, there was joint possession, but then they thought this handoff meant delivery. There's no facts to suggest that. And that's the same way if we go with his last version, which is that Meredith Castro did everything, brought it home. There's no facts under which that scenario, which they would have found him guilty, even if they had used the wrong definition because had they done so, they would have had to hear some evidence, some statement that at some point she handed it to him. There's no evidence of that. They couldn't have determined that. They determined it properly under the reasonable probability that this would have been a different verdict. They could not prove that. Therefore, we would ask this court to affirm defendant's conviction and sentence. No, I'm good. Okay. Thank you. Mr. Rogers. Yes, thank you, Your Honor. First, this is a very general point. There's been a lot of talk here, and not completely unjustified, but about speculating about what the jury may or may not have found, if this or if that. But I think we sort of need to keep our eye on the ball here. And that is, this is a question about whether the jury had enough information, the right instructions, to make their call on their factual questions that were before them. To even know that they were supposed to make this call? Pardon me? To have enough information to know that they had to even make this call? Well, I think the instructions did tell them they had to find, you know, that there was causation and that there was delivery. But I don't think they – what they were missing is what exactly cause meant and what delivery meant. And without knowing that, they were in a worse-off position than they would have been if they had been given the instructions. And I think, as a main point or a general point, I would say that, you know, this is not a case where giving these instructions really would have confused the jury and put them in a worse position to make their factual determination, to do their job. They would have known more about what the law actually requires to make these findings than they did by virtue of the instructions that were given. Well, and Ms. Swiss makes a good point, and she indicates that in the Coots case, the reason that all three of those instructions were given was because that – but weren't given and why it was errors because the jurors had that question in their mind. They asked that specific question. You didn't have that in this case. So where is it in the committee notes that says all three of these definitions need to be given? Well, I don't – to be honest with you, I don't know that it's in the committee notes, but my answer to that would be this. Obviously, if the jury asks the question, does giving – does just giving without consideration equal delivery, you know that the jury – we have reason to believe that the jury is confused about what delivery means. But – so if you don't give the instruction at all, though, it's – you can't eliminate the possibility that the jury is still confused and these don't know enough to ask. So you're supposed to speculate that the jury is confused? I don't think you're supposed to speculate that the jury is confused, but I think you can't assume that they're not confused. So you're thinking you're going to make it a more informed jury by giving the instructions? Exactly. And I would – to answer – maybe to get back to what Justice Pence was driving at is – and to sort of use a famous phrase, you know, the – Not so famous. The absence of – I want to make sure I get it right. The absence of evidence is not evidence of absence. And so just because you don't have a jury note doesn't mean that you have conclusive evidence that the jury is not confused. Well, if you ask a jury what does joint possession mean, do you think they would probably say it's anybody that has a marijuana cigarette in their hand or something to that effect? Some jurors might think that. I think, you know, some jurors very well may be capable of understanding the idea that they can – that there can be such a thing as joint possession. Well, do the jurors know anything about dominion and control? I guess that depends on the jurors. I don't think – this is why we have jury instructions, is because we don't assume that the jury knows the legal definitions of terms. Some terms don't need definitions. Some do. And in this case, you know, both causation and delivery were in play. These proposed instructions are the instructions that should have been given in the case of the ineffective assistance claim. Both helped the jury understand two of the – the two most vital questions really in the case. And as far as whether there would have been an acquittal if the jury had believed that – the defense testimony that was cast for that – basically what he said in his trial, that may be true. But the problem here is that there's still evidence that if you look at – I mean, maybe the jury did reject that. But what we don't know is, well, maybe they believed what he said to Detective Vargas, which is, well, I don't really remember. We both may have gone, may have gone together, may have been separate trips. We might even have it delivered. Then you're in a case that's very much like Coots. And I don't think we can assume that the jury, just because they found guilty, did so because they didn't believe what he said to Detective Vargas. They may have thought, maybe if I'm guilty, even though we do believe what he said to Detective Vargas. I did want to say something about the first issue, but I know time's up, so I guess I'm not in a position to do so. So unless this Court – Make a conclusory statement relative to the first issue. Well, that would be that we know that the jury had to find cause. That is in the statute. He was charged with the death of Meredith Castro. So I think it's appropriate to instruct with respect to her death. And we know that cause in this context means proximate cause. And we know, and the State admits, that proximate cause means foreseeability. And that this is really a question of fairness to defendants because we're talking about legal cause, which is when is it fair to hold somebody liable for what they did. And in saying that, I'm drawing on the Cook case, and I'm drawing on what the Hudson case said, which they also quoted Professor Lafayette. So based on that and based on previous arguments, I'd ask that Mr. McKeon proceed with the trial. Thank you. The case will be taken under advisement. Court is adjourned.